IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Sue Hampl,

    Plaintiff,

  v.                               Case No. 2:04-cv-847

Franklin International,
Inc., et al.,

    Defendants.

OPINION AND ORDER

    This is an action filed by plaintiff Sue Hampl pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. The defendants are Franklin International, Inc. ("Franklin"), the former employer of George Hampl, and the Franklin International, Inc. Group Life & Accidental Death & Dismemberment Employee Benefit Plan ("the Plan"). Plaintiff alleges that she is the executor of the estate of George Hampl and the beneficiary of Mr. Hampl's life insurance benefits under the Plan.

    According to the complaint, George Hampl was an employee of Franklin from May 25, 1962, until his death on April 16, 2003. Complaint, ¶¶ 6, 19. Plaintiff alleges that Mr. Hampl was a participant in the Franklin Plan. Complaint, ¶ 6. The Plan, a copy of which is attached to the complaint as Exhibit A, provides for life insurance benefits underwritten by UNUM Life Insurance Company of America in the amount of up to $400,000. To be eligible for benefits, participants are required to be in "active employment" with Franklin, which is defined as working:

    1.    for your employer on a permanent full-time basis and paid regular earnings;

>    2.   at least the minimum number of hours shown in the
>         Plan Outline; and either
>    3.   at your employer's usual place of business; or
>    4.   at a location to which your employer's business
>         requires you to travel.

Exhibit A, p. 5. The minimum requirement for active employment under the Plan is thirty-two hours per week. Exhibit A, p. 4.

The Plan also gives participants the right to convert to a personal life policy in the amount of the life insurance coverage which terminates or reduces because the employee ends employment or changes job status so as to become ineligible. Exhibit A, p. 8. In regard to applying for a personal life policy, the Plan further states:

> To apply, you must complete an application. That application along with the first premium payment must be sent to us. It must be done within 31 days from the date the life insurance terminated. No evidence of insurability is needed.
>
> For complete details, contact the Insurance Administrator at your work location.

Exhibit A, p. 8. The Plan summary further advises employees: "If you cease active employment, see your supervisor to determine what arrangements, if any, may be made to continue your coverage beyond the date you cease active employment." Exhibit A, p. 13.

Plaintiff alleges that in 1996, George Hampl learned that he had developed a heart condition. Mr. Hampl allegedly informed Dr. L. Thomas Williams, defendants' representative, about this condition. Dr. Williams allegedly represented that for the next seven years, Franklin would continue Mr. Hampl's full salary and benefits even if his employment status changed to less than active employment. Complaint, ¶ 13. Plaintiff further alleges that

throughout this seven-year period, Mr. Hampl's payroll stubs indicated that Franklin was paying a premium for Mr. Hampl's life insurance coverage, and both Franklin and Mr. Hampl paid all accrued premiums on the coverage. Complaint, ¶ 15. Plaintiff alleges that when Mr. Hampl's hourly employment dropped below the rate required for active employment, he never received notice of his conversion rights. Complaint, ¶ 18. The complaint further states that following Mr. Hampl's death, plaintiff submitted a claim for benefits under the Plan. Complaint, ¶ 19. Her claim for benefits was denied by the defendants. Complaint, ¶20.

Plaintiff filed the instant action on September 1, 2004. In Count 1 of the complaint, plaintiff asserts a claim for wrongful denial of benefits pursuant to 29 U.S.C. §1132(a)(1)(B). She alleges that the defendants violated ERISA and the terms of the plan when they failed to advise Mr. Hampl of his conversion rights or to give him a meaningful opportunity to exercise those rights, and that the Plan improperly denied plaintiff's claim for benefits. In Count 2 of the complaint, plaintiff asserts an estoppel claim based on the alleged representations of Dr. Williams. In Count 3 of the complaint, plaintiff asserts a claim for breach of fiduciary duty pursuant to 29 U.S.C. §1132(a)(3), alleging that Franklin breached its fiduciary duty under ERISA by denying plaintiff's claim for benefits.

This matter is now before the court on defendants' motion pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings as to Counts 2 and 3 of the complaint. Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Fed.R.Civ.P. 12(b)(6). <u>E.E.O.C.</u>

v. J.H. Routh Packing Co., 246 F.3d 850, 851 (6th Cir. 2001). Judgment may be granted under Rule 12(c) if the court determines that the moving party is entitled to judgment as a matter of law. Astor v. International Bus. Machs. Corp., 7 F.3d 533, 538 (6th Cir. 1993). A motion for judgment on the pleadings under Rule 12(c) may be granted only if, construing the complaint in the light most favorable to the plaintiff, it is determined that plaintiff undoubtedly can prove no set of facts in support of her claim that would entitle her to relief. Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). In reviewing the motion, this court must accept all of the complaint's factual allegations as true. Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 511-512 (6th Cir. 2001). However, the court need not accept as true legal conclusions or unwarranted factual inferences. Grindstaff, 133 F.3d at 421.

  Defendants first move for judgment on Count 2, the estoppel claim. A claim of equitable estoppel may be a viable theory in ERISA cases. Sprague v. General Motors Corp., 133 F.3d 388, 403 (6th Cir. 1998). The elements of an equitable estoppel claim are as follows: (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment. Id.

  However, the principles of estoppel "cannot be applied to vary

4

the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." Id. at 404. As the court in Sprague explained:

> There are at least two reasons for this.  First, as we have seen, estoppel requires reasonable or justifiable reliance by the party asserting the estoppel.  That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.  Second, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves.  That would not be consistent with ERISA.

Id.  The court then concluded that plaintiffs' estoppel claims failed as a matter of law because the terms of the plan in that case were unambiguous.  See also Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 456 (6th Cir. 2003)(a party cannot seek to estop the application of an unambiguous written provision in an ERISA plan).

In the present case, the terms of the Plan unambiguously state that only employees engaged in active employment are eligible for benefits.  The Plan also describes the right to apply for conversion coverage when the employee is no longer engaged in active employment, and advises employees: "For complete details, contact the Insurance Administrator at your work location.".

Plaintiff asserts that the plan document creates an ambiguity when it states: "If you cease active employment, see your supervisor to determine what arrangements, if any, may be made to continue your coverage beyond the date you cease active employment."  However, this language is not ambiguous or inconsistent with the other plan language concerning the requirement of active employment.  The court in Moffitt v. Whittle

5

Communications, L.P., 895 F.Supp. 961 (E.D.Tenn. 1995) examined this same plan provision and concluded:

> The provision simply advises the employee contemplating or facing a termination of his or her employment to discuss continuation of coverage with his or her employer. The phrase "if any" makes it clear that this plan provision does not itself constitute a continuation-of-coverage provision or agreement, and that it is possible that no continuation of coverage is available to the inquiring employee under his or her specific plan. No reasonable reader of the provision could conclude that its language promises that whatever an employer tells its employee about continuation of coverage, whether or not supported by the plan, the insurer will provide what the employer promises.
>
> Furthermore, this provision in the summary plan description of the booklet should be construed in light of the section elsewhere in the booklet concerning the privilege to convert from group to individual disability insurance coverage under certain circumstances. While the summary plan description provision alerts the employee to the issue of continuation of coverage after the termination of employment, the section of the booklet concerning the conversion privilege supplies the substance of what Mr. Moffitt's employer should have told him in this case.

895 F.Supp. at 968 (footnote omitted).

Under Sprague, the clear terms of a written employee benefit plan may not be modified or superseded by oral undertakings on the part of the employer. Sprague, 133 F.3d at 403. The plan language in this case is unambiguous, and plaintiff's claim of estoppel fails as a matter of law. Defendants are entitled to judgment on Count 2 of the complaint.

Defendants have also moved for judgment on the pleadings on Count 3 of the complaint, which alleges a breach of fiduciary duty. Plaintiff's claim for breach of fiduciary duty cannot fall within 29 U.S.C. §1132(a)(2), because an action under that section cannot

be brought by plaintiff to secure individual benefits, but only to obtain relief for the plan as a whole.  Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134, 140-44 (1985); Weiner v. Klais and Co., Inc., 108 F.3d 86, 91-92 (6th Cir. 1997).  Therefore, plaintiff's claim for breach of fiduciary duty, if any, must fall within the catchall provision in 29 U.S.C. §1132(a)(3).

Defendants argue that under Varity Corp. v. Howe, 516 U.S. 489, 512 (1996), plaintiff, as a plan beneficiary, cannot seek relief under §1132(a)(3) if she can seek adequate relief under another subsection of §1132.  In Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 615 (6th cir. 1998), the court held that the plaintiff had no right of action for breach of fiduciary duty pursuant to §1132(a)(3) because §1132(a)(1)(B) provided a remedy for his alleged injury that allowed him to bring a lawsuit to challenge the plan administrator's denial of benefits.  See also Marks, 342 F.3d at 454 (where plaintiff was permitted to and did file an action under §1132(a)(1)(B) challenging defendant's decision to deny benefits, dismissal of claim for breach of fiduciary duty was proper); Shackelford v. Continental Cas. Co., 96 F.Supp.2d 738, 742-43 (W.D.Tenn. 2000)(where beneficiary has the ability to bring a lawsuit under §1132(a)(1)(B) to challenge the denial of benefits, he cannot maintain a claim for breach of fiduciary duty under §1132(a)(3)).  In Wilkins, the court held that where the plaintiff availed himself of the remedy available to him under §1132(a)(1)(B) by filing a lawsuit under that section challenging the denial of benefits, he did not have a right to a cause of action for breach of fiduciary duty under §1132(a)(3) even though the district court ultimately reviewed his denial of

7

benefits claim and found in favor of the defendant administrator.

Plaintiff relies on Gieger v. Unum Life Ins. Co., 213 F.Supp.2d 813 (N.D.Ohio 2002), in which the court declined to extend the holding in Wilkins to the pleading stage and overruled the defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(6). However, after the decision in Gieger, the Sixth Circuit in Marks affirmed the dismissal of plaintiff's claim for breach of fiduciary duty where the plaintiff was permitted to file and did file a suit pursuant to §1132(a)(1)(B). Marks, 342 F.3d at 454. In DeWald v. UNUM Provident Corp., No. 1:05cv135 (unreported), 2005 WL 1126742 at *3 (N.D.Ohio 2005), a court in the Northern District of Ohio concluded that Geiger was no longer good law due to subsequent Sixth Circuit decisions.

Plaintiff also cites this court's opinion in Little v. Unum Provident Corp., 196 F.Supp.2d 659 (S.D.Ohio 2002). However, Little is distinguishable. The plaintiff in that case had framed her claims solely in terms of state law, and a motion to dismiss was filed asserting that the claims were preempted under ERISA. This court dismissed all but two claims which could arguably be construed as an ERISA claim for benefits under §§1132(a)(1)(B) and an ERISA claim for breach of fiduciary duty under §1132(a)(2). Plaintiff in this case does not assert a claim for breach of fiduciary duty under §1132(a)(2). In addition, the defendants in Little did not argue that plaintiff's breach of fiduciary duty claim should be dismissed under Wilkins; in fact, this court noted that defendants did not address plaintiff's breach of fiduciary duty claim at all in their motion to dismiss. Little, 196 F.Supp.2d at 672. Thus, no question under Wilkins was ever

8

litigated in that case.

Plaintiff has availed herself of the remedy of asserting a claim under §1132(a)(1)(B) for wrongful denial of benefits. Under the holdings in <u>Marks</u> and <u>Wilkins</u>, plaintiff has no claim for breach of fiduciary duty under §1132(a)(3).

Defendants also argue that plaintiff's claim for breach of fiduciary duty should be dismissed because plaintiff seeks legal, not equitable, relief. Under §1132(a)(3), plaintiff can seek: "(A) to enjoin any act or practice which violates [ERISA} or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan."

In <u>Mertens v. Hewitt Associates</u>, 508 U.S. 248, 256 (1993), the Supreme Court noted that "equitable relief" refers to those categories of relief that were typically available in equity, such as injunction, mandamus, and restitution, but not compensatory damages. "Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." <u>Brown v. Massachusetts</u>, 487 U.S. 879, 918-19 (1988)(Scalia, J., dissenting), as quoted with approval in <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 210 (2002). Because money damages are the classic form of legal relief, §1132(a)(3) does not authorize suits for compensatory damages. <u>Allinder v. Inter-City Products Corp. (USA)</u>, 152 F.3d 544, 552 (6th Cir. 1998).

9

Thus, in <u>Knudson</u>, the Supreme Court held that a claim seeking an injunction to compel the payment of money allegedly due to an individual beneficiary under the terms of a plan or specific performance of a past due monetary obligation was a legal remedy not available in equity. 534 U.S. at 210-11. In such a case, the claim for injunctive relief is merely a repackaged claim for individual benefits. It is not, by way of contrast, like the breach of fiduciary duty claims asserting defects in plan-wide claims-handling procedures and seeking plan-wide injunctive relief which were found to be properly asserted under §1132(a)(3) in <u>Hill v. Blue Cross and Blue Shield of Michigan</u>, 409 F.3d 710, 717-18 (6th Cir. 2005).

The Supreme Court in <u>Knudson</u> further noted that restitution was equitable in nature when the money allegedly belonging to the plaintiff could clearly be traced to particular funds or property in the defendant's possession, but legal in nature where the plaintiff in essence seeks to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money. <u>Knudson</u>, 534 U.S. at 213. <u>See</u> <u>also</u> <u>Crosby v. Bowater Inc. Retirement Plan</u>, 382 F.3d 587, 594-96 (6th Cir. 2004)(claim seeking imposition of constructive trust over amount of plan assets necessary to pay claim was legal in nature, even though claim for benefits was based on violation of ERISA provision rather than breach of contract theory); <u>Qualchoice, Inc. v. Rowland</u>, 367 F.3d 638, 644-45 (6th Cir. 2004)(claim seeking restitution or imposition of constructive trust or equitable lien is a legal claim if plan participant or beneficiary does not possess an identifiable fund).

In the instant case, plaintiff seeks: compensatory damages or

10

an award of life insurance benefits in the amount of $400,000; an injunction ordering defendants to provide plaintiff with the opportunity to convert Mr. Hampl's life insurance benefits into a personal life insurance policy and to provide plaintiff with life insurance benefits in the amount of $400,000; and an order of restitution in the amount of the $400,000, the value of life insurance benefits allegedly promised to plaintiff.  All of these claims are, in effect, legal claims for the payment of money.  In regard to the restitution claim, there are no allegations in the complaint that the defendants hold a fund in which plaintiff has an interest.  Rather, any insurance benefits under the terms of the Plan are payable by UNUM Life Insurance Company, a third party.  Since plaintiff seeks relief which is legal rather than equitable in nature, she may not seek recovery under §1132(a)(3).  Defendants are entitled to judgment on Count 3 of the complaint.

In accordance with the foregoing, defendants' motion for judgment on the pleadings as to Counts Two and Three is granted.

Date: August 11, 2005              s\James L. Graham
                                   James L. Graham
                                   United States District Judge